

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

June 1, 1959

Honorable Bill Allcorn
Commissioner, General
  Land Office
Austin 14, Texas

Opinion No. WW-636

Re: Whether rentals were due
December 4, 1958 on certain
submerged lands leases in the
Gulf of Mexico dated December
4, 1953 if the lessees de-
sired to have the running of
primary terms suspended under
Article 5421i, VCS, and re-

Dear Mr. Commissioner:

lated questions.

     In your opinion request you refer to the pending
"Tidelands" litigation and to Attorney General's Opinion
No. WW-540 regarding the suspension of leases covering
submerged tracts in the Gulf of Mexico beyond three (3)
geographic miles under the provisions of Article 5421i,
VCS, as amended.*

     You state:

     "A question has now arisen concerning the
payment of rentals on leases executed December 4,
1953, which would have expired December 4, 1958
but for the fact that the running of the primary
terms thereof were suspended as of November 7,
1957," the date the suit was filed and which was
approximately 13 months prior to the December 4,
1958 rental date.

     In your opinion request after referring to Opinion
No. WW-540, and setting forth certain facts, you propound
three questions, which are in substance:

(1)    In view of the commencement of litigation on
November 7, 1957, were rentals due December
4, 1958 on submerged lands leases in the Gulf
of Mexico executed December 4, 1953 if the
lessees desired to have the running of the

---

*(Acts 1941, 47th Leg., p. 1405, ch. 637, sec. 1, as
amended Acts 1951, 52nd Leg., p. 750, ch. 406, sec. 1)

primary terms thereof suspended under the provisions of Article 5421i?

(2)    If such rentals are not paid are such leases subject to forfeiture by the Commissioner under the provisions of Article 5372, VCS?

(3)    Is the primary term of such a lease (as well as obligations thereunder) suspended as to that portion lying more than three (3) geographic miles seaward from the ordinary low-water mark or outer limit of inland water, as indicated in Opinion No. WW-540?

You also state that paragraph 2 of each of the leases in question provides in part:

"2.    On or before one year from the date of this lease and annually thereafter for each of the following years during the life of this lease, the  lessee shall pay to the Commissioner of the General Land Office, Austin, Texas, an annual rental of Two Dollars ($2.00) per acre; provided that when royalties paid during any year during the life of this lease equal or exceed the annual rental, no annual rental will be due for the following year; otherwise, there shall be due and payable on or before the anniversary date hereof Two Dollars ($2.00) per acre, less the amount of royalties paid during the preceding year."

Your questions will be answered in sequence:

(1)

In view of the commencement of litigation November 7, 1957, were rentals due December 4, 1958 on submerged lands leases in the Gulf of Mexico executed December 4, 1953 if the lessees desired to have the running of the primary terms thereof suspended under the provisions of Article 5421i?

ANSWER:

Rentals were due on December 4, 1958 on leases dated December 4, 1953 if the lessees desired to have the primary terms suspended under Article 5421i, VCS.

You state in substance that some of the lessees take the position that no rentals were due December 4, 1958

because Article 5421i refers to rentals which "accrue" during the period of litigation and that since four rental payments have been made no further rentals will "accrue" during the litigation, and therefore the leases are to remain in effect without further payment. In our opinion that view fails to take into account the further and decisive wording of the statute which is underscored below:

> "Provided further, that the lessee shall pay all annual delay rentals and any royalties which accrue during the period of litigation the same as during any other period of the extended primary term."

In our opinion the statute requires rental payments not only during, but after, the primary term in consideration for keeping the lease alive but suspended. Otherwise, the phrase "during any other period of the extended primary term" would be meaningless.

A statute should be construed so as to accomplish a purpose or result, and the object of statutory construction is to enforce and give effect to legislative intent. (39 Tex Jur /Statutes7 Sec. 87, p. 160 et seq.) Here, the intent is expressed plainly.

"Extended" both by court decisions and dictionary definition means to stretch or draw out; to lengthen or prolong, either in space or time; to protract, or to continue (Webster's New International Dictionary, 2nd Edition, Unabridged; Mo. K & T R Co. of Tex. v. Texas & N O Ry. Co., 172 F2d 768; Cushing v. Inhabitants of Town of Blue Hill, 92 Atl 2d 330, 148 Me. 243; State v. Zozzaro, 20 Atl 2d 737, 128 Conn. 169; West Madison State Bank v. Mudd, 250 Ill. App. 258; Crane Enamelware Company v. Smith, 168 Tenn. 203, 76 S.W.2d 644; Flager v. Hearst, 70 N.Y.S. 956, 64 App Div 18; Loeffler v. Federal Supply Company, 187 Okl 373, 102 P.2d 862.

In enacting Article 5421i, as amended, it is apparent that the Legislature had in mind the fact that litigation can be protracted. It was providing for the eventuality that the litigation could well extend beyond the primary term, but, for the protection of the State it provided for a continuance in the payment of rentals during the extended term, and for the protection of the lessees it provided for the rentals to be held in suspense and subject to refund to the lessees if the State was unsuccessful in the litigation. It is difficult to conceive how the Legislature could have enacted a more just statute protecting, as it does, both the State and the lessees.

Paragraph 2 of the leases, quoted above, evidences that the Land Commissioner followed the Legislative intent, and the lessees are, of course, bound by the terms of the leases they received. That paragraph refers to the "life" of the lease. Under the circumstances the "life" of the lease can be extended by compliance with Article 5421i. If the lessees choose not to pay the annual rental (which does not appear to be an "annual delay rental" in the traditional sense) to effectuate the suspension then the leases may be forfeited.

### (2)

If such rentals are not paid are such leases subject to forfeiture by the Commissioner under the provisions of Article 5372, VCS?

ANSWER:

Assuming that the leases in question were executed under and by virtue of Title 86, chapter 4, RCS, then if the rentals referred to were not paid such leases are subject to forfeiture by the Commissioner under the provisions of Article 5372, VCS (Acts 2nd C.S. 1919, p. 249) for the reasons set forth in our answer to question No. 1.

### (3)

Is the primary term of a lease (as well as obligations thereunder) suspended as to that portion of a lease lying more than three geographic miles seaward from the ordinary low-water mark or outer limit of inland waters, as indicated in Opinion No. WW-540?

ANSWER:

If a portion of a lease lies more than three (3) geographic miles seaward from the low-water mark or from the outer limits of inland waters off the coast of Texas, and a portion lies landward of that line, the obligations of the lessees, under Article 5421i, are not suspended as to the portion lying landward of that line, but the primary terms and other lease obligations are suspended as to that portion lying seaward of such line except that the lessees must continue to pay annual delay rentals or royalties on the seaward portion. The statute in question reads in part as follows:

"The running of the primary term of any oil, gas or mineral lease. . .which may hereafter

become involved in litigation. . .shall be
suspended, and all <u>obligations</u> imposed by such
leases shall be set at rest during the period
of such litigation . . .<u>provided</u>. . .that the
lessees shall pay all annual delay rentals or
any royalties which accrue during the period
of litigation. . ."   (Emphasis supplied.)


## SUMMARY

As to submerged lands leases in the
Gulf of Mexico involved in the "Tidelands"
litigation* as to which four prior rental
payments had been made, and which would
have expired December 4, 1958, but for the
fact that about 13 months prior thereto
the running of the primary terms was con-
ditionally suspended under Article 5421i
as of November 7, 1957, (date last "Tide-
lands" suit was filed) such leases could
be continued in effect during the litiga-
tion under that Statute if, and only if,
such lessees made annual rental payments
December 4, 1958 and continue to make
annual rental payments in tue future during
the period of litigation (whether during,
or after, the ordinary primary terms of the
leases) throughout the period of the "ex-
tended" primary terms.  Non-payment of such
rentals subjects the leases to forfeiture
by the Commissioner under Article 5372,
VCS.  If a portion lies more than three (3)
geographic miles seaward from the ordinary
low-water mark or from the outer limits of
inland waters off the coast of Texas in the
Gulf of Mexico, and a portion lies landward
of that line, the obligations of the **lessee**
(under Article 5421i, as amended) are not
suspended as to the portion lying landward
of that line, but the primary term and other
lease obligations are suspended as to that
portion lying seaward of such line except

---

* (United States v. Louisiana, et al, U.S. Sup. Ct. No. 10
Original, October Term 1958, now set for argument October
12, 1959.)

Honorable Bill Allcorn, Page 6 (Opinion No. WW-636)

the lessee must continue to pay rentals and
royalties on the seaward portion as stated
in Opinion No. WW-540, to which reference is
here made.

Very truly yours,

WILL WILSON
Attorney General of Texas

By JAMES N. LUDLUM
First Assistant

JNL:bct

APPROVED:

OPINION COMMITTEE:
Geo. P. Blackburn, Chairman

James H. Rogers
Grundy Williams
John Wildenthal, Jr.

APPROVED FOR THE ATTORNEY GENERAL

By: W. V. Geppert